IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>vs.<br><br>CLAUDE CHARLES IRON THUNDER,<br><br>Defendant. | 4:18CR3041<br><br>MEMORANDUM<br>AND ORDER |

Pending before me is a well-briefed and argued Motion for Compassionate Release submitted by defense counsel whom I believe to be acting pro bono. Despite that high-quality advocacy, I will deny the motion.

*Background*

Iron Thunder, who is 43, has had Covid while in prison at Leavenworth USP, but he recovered. Leavenworth has had a large share of Covid cases. There he is serving a sentence of 84 months for meth distribution, and he is set for release on April 24, 2024.

Iron Thunder has gotten along well in prison. He likes athletics and participates in them.

He has serious medical problems, as recounted by the probation officer and as shown by the medical records retrieved by the probation officer. (Filing 66; Filing 67.) According to the Presentence Report, prior to his incarceration, Mr. Iron Thunder was not under the care of a physician. He reported that he had suffered a heart attack approximately 5 years prior. At the time, he was prescribed Coreg and Altace for high blood pressure and Metformin for diabetes. He also indicated that he

has experienced kidney-related issues in the past. He denied any disabilities and reported no allergies. (Filing 48 at CM/ECF p. 15.)

According to BOP medical records, Mr. Iron Thunder has been diagnosed with alopecia areata, atherosclerosis, hypertension, obesity, and Type 2 Diabetes mellitus. Alopecia areata is an autoimmune skin disease that causes hair loss on the scalp, face, and other areas of the body.

There is no information to indicate that this condition is currently being treated. Mr. Iron Thunder is currently prescribed Aspirin (81mg/daily), Atorvastatin (40mg/daily), Carvedilol (25mg/daily), Chlorthalidone (25mg/daily), and metFORMIN HCI (1000mg/daily) to address the above-noted medical conditions. Mr. Iron Thunder also uses a CPAP machine to address his sleep apnea.

The probation officer spoke with Mr. Iron Thunder's wife, Tanya Iron Thunder. She confirmed the above information and also advised that Mr. Iron Thunder has intermittent bleeding from his rectum. The BOP medical records indicate that Mr. Iron Thunder reported the bleeding to medical staff. A rectal exam of Mr. Iron Thunder was conducted on May 23, 2019. At that time there was no active bleeding; however, it was "positive for a large hemorrhoid."

In the Emergency Motion For Compassionate Release (Filing 57), in section II. Statement of Facts, it is stated that Mr. Iron Thunder suffers from HIV. According to the information received from the BOP, Mr. Iron Thunder's HIV test result was non-reactive, indicating that he does not have HIV. Nonetheless, I am willing to assume that he has the disease, but I note that it does not appear to impair him.

Mr. Iron Thunder tested positive for COVID-19 on September 4, 2020. Medical notes received from the BOP indicate that on September 8, 2020, Mr. Iron Thunder complained of a cough, but "No acute distress noted with the encounter. Respiration even and unlabored & speaking clearly/moving in cell with ease/follow

2

directions as advised." It was further noted on September 15, 2020, "Patient doing well, removed from isolation."[1]

Iron Thunder has a horrible criminal history. As the Presentence Report indicated when assessing a Criminal History of V, it took many pages and paragraphs to describe. (Filing 48 at CM/ECF pp. 8-13.) Those offenses included Assault, 3rd Degree (x2); Possession of a Controlled Substance (x3); Forgery, 2nd Degree; Attempt of Certain Felony Offenses (amended from Delivery of a Controlled Substance); Disturbing the Peace (x3); Delivery of a Controlled Substance; Possession of a Firearm; Theft by Unlawful Taking; Domestic Assault, 3rd Degree (x2); and Obstruct Peace Officer. Mr. Iron Thunder has also been convicted of disturbing the peace, speeding, failure to return library materials, occupant protection system, and false registration, although these convictions were not counted for criminal history purposes. (Filing 67 at CM/ECF pp. 1-2.)

Even worse is Iron Thunder's long and consistent addiction to alcohol and methamphetamine. At the time of his arrest, he advised he had been using alcohol about every day prior to his arrest. He first started drinking at age 13. When evaluated by a drug counselor, Iron Thunder gave a history of using methamphetamine daily since age 18 and perhaps as much as a quarter-once per day, which quantity was life-threatening. He was diagnosed with Severe Amphetamine Use Disorder in a controlled environment and Severe Alcohol Use Disorder in a controlled environment. (*Id.* at pp. 2-3.)

---

[1] There is a debate in the medical community whether those who have suffered from Covid but recovered have immunity. There is good reason to believe that such persons do have immunity. See, for example, Apoorva Mandavilli, *Immunity to the Coronavirus May Last Years*, *New Data Hint*, New York Times (Nov. 17, 2020). But I do not attempt to resolve that debate here and do not base my decision on the question of conferred immunity.

To his credit, Iron Thunder completed the Drug Educational Program while in custody. (*Id.* at p. 3.) However, the Warden concluded that Iron Thunder had a high risk of recidivism. (Filing 62-1 at CM/ECF p. 44.)

The probation officer found that release to his wife would be acceptable. (Filing 67 at CM/ECF p. 4.) Among other things, Mr. Iron Thunder qualifies for medical treatment through his tribal affiliation.

A Nebraska criminal record check of the wife using the Nebraska Criminal Justice Information System (NCJIS) was conducted on Tanya Iron Thunder (nee: Stuart). She has multiple criminal convictions, including Disturbing the Peace (1996), Attempt of a Class 2 Misdemeanor (1997), Forgery 2nd Degree (2003) x3, DUS (2003) x2, Possess Controlled Substance (2006), Theft by Deception (2009), Possession of a Controlled Substance (2017), Shoplifting (2017), and Theft by Unlawful Taking (2018).

The probation officer noted, however, that she is currently very involved in the substance-abuse-recovery community in Lincoln and, by her admission, participating in individual counseling. She is deserving of great credit for attempting to turn her life around and help her husband at the same time. That said, a reasonable person would worry whether she could maintain her sobriety under the stresses inherent in caring for her heavily addicted husband.

*Analysis*

Pursuant to 18 U.S.C. § 3582(c)(1)(A)(i), a defendant may (after exhausting his administrative remedies[2]) move for reduction of his term of imprisonment based upon "extraordinary and compelling reasons." The statute reads in pertinent part:

---

[2] Iron Thunder has done so.

> the court, upon motion of the Director of the [BOP], or upon motion of the defendant after the defendant has fully exhausted all administrative rights to appeal a failure of the [BOP] to bring a motion on the defendant's behalf or the lapse of 30 days from the receipt of such a request by the warden of the defendant's facility, whichever is earlier, may reduce the term of imprisonment (and may impose a term of probation or supervised release with or without conditions that does not exceed the unserved portion of the original term of imprisonment), after considering the factors set forth in section 3553(a) to the extent that they are applicable, if it finds that—
>
> (i) extraordinary and compelling reasons warrant such a reduction . . . and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

After considering the factors enumerated in 18 U.S.C. § 3553(a), I may grant the motion if extraordinary and compelling reasons warrant the reduction, and such a reduction is consistent with applicable policy statements issued by the Sentencing Commission. *Id.* In so doing, I find it helpful to consult, but not be bound by, U.S.S.G § 1B1.13 inasmuch as that policy statement was not amended after the adoption of 18 U.S.C. § 3582(c)(1)(A).

I now find and conclude that the Defendant's sentence should not be reduced even if I assume his tenuous physical condition constitutes extraordinary and compelling circumstances under the statute or the policy statement. *See*, *e.g.*, *United States v. Rodd*, 966 F.3d 740, 747 (8th Cir. 2020) (affirming denial of compassionate release motion; stating: "In other words, the district court assumed that Rodd's health and family concerns constituted extraordinary and compelling reasons for compassionate release. Therefore, we need only determine 'whether the district court abused its discretion in determining that the § 3553(a) factors weigh against granting [Rodd's] immediate release.'" (citation omitted)). *See also United States v. Loggins*, 966 F.3d 891, 892 (8th Cir. 2020) (affirming denial of compassionate release motion

5

and noting that: "An application note [to USSG § 1B1.13] acknowledges that the district court is 'in a unique position to determine whether the circumstances warrant a reduction,' after considering the factors set forth in 18 U.S.C. § 3553(a) and the circumstances listed in the policy statement. *Id.*, comment. (n.4).").

Briefly, I elaborate. The Defendant was convicted of a very serious crime. Like all inmates, he is in danger of contracting the virus (again). But he seems to have been well taken care of by the Bureau of Prisons. Furthermore, there is no evidence that he is unable to care for himself in prison.

What is most concerning is the safety of the community should he be released. His horrible criminal history and his tragic addiction to methamphetamine and alcohol suggest that after only a relatively short time in prison, he is likely to reoffend if I cut him loose. As the Warden noted, his recidivism score is high. Moreover, while placement with his wife is marginally acceptable, it is at best iffy. She has her own problems, and putting two addicts together seems far too risky.

IT IS ORDERED that the Motion for Compassionate Release (Filing 57) is denied.

November 25, 2020.

BY THE COURT:

*Richard G. Kopf*

Richard G. Kopf
Senior United States District Judge

6